UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 16-10111-RWZ |
| ) | |
| HAZRAT KHALID KHAN, ) | |
| ) | |
| Defendant ) | |

ORDER PUSUANT TO 18 U.S.C. § 3006A(f)

August 1, 2016

Hennessy, M.J.

For the last three months Defendant, Hazrat Khalid Khan, has received the benefit of services from an attorney provisionally appointed pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A (the "CJA"). Having advised this Court at a hearing on July 29, 2016 that Defendant will not provide information that would enable the Court to determine whether Defendant is financially unable to afford counsel, and instead having advised the Court that Defendant will retain private counsel, in accordance with the schedule set forth below, Defendant shall reimburse the public for the costs and fees of Defendant's CJA representation until all such costs and fees are repaid.

**Background**

Defendant is charged by indictment in a tax conspiracy, in violation of 18 U.S.C. § 371, and with thirteen counts of willful failure to collect or pay over employment taxes, in violation of 26 U.S.C. § 7202. See Docket No. 1. He was arrested in another district and released on conditions. On April 29, 2016, the Court arraigned Defendant and he pleaded not guilty. At

arraignment, when Defendant reported that he had retained, or was in the process of retaining, an attorney in Boston, this Court provisionally appointed counsel, pursuant to the CJA, so that Defendant was not without counsel. See Docket No. 10. The Court asked CJA counsel to apprise the Court of the status of Defendant's engagement of private counsel. Id. During the arraignment, the government reported that execution of a search warrant of Defendant's residence in 2013 resulted in the seizure of approximately $77,000 in cash and gold coins. The government also reported that Defendant owns two corporations, has two restaurants, both of which he manages, and collects rents on residences in Wilkes-Barre, Pennsylvania.

By June 8, 2016, the government had provided discovery and the prosecution was proceeding; however, no retained counsel had filed an appearance, and provisional CJA counsel continued to represent Defendant. See Docket No. 16. For instance, such counsel had in fact received and reviewed discovery. Id. On June 10, 2016, this Court conducted an ex parte hearing with Defendant and CJA counsel regarding Defendant's ability and efforts to retain counsel. See Docket No. 18. At the conclusion of the hearing, the Court ordered Defendant to file by June 17, 2016 a financial affidavit so the Court could satisfy itself whether Defendant was unable to afford private counsel. Id.

On July 14, 2016, the Court held an interim status conference at which Defendant was still represented by CJA counsel. See Docket No. 22. Despite the Court's June 10, 2016 order, no financial affidavit had been filed. The Court ordered Defendant to file a financial affidavit by July 21, 2016, and then extended the filing deadline by a week, due to the unavailability of CJA counsel. See Docket Nos. 22, 28 and 29. On July 27, 2016, CJA counsel wrote to the Court reporting only that Defendant "is unable to submit a financial affidavit in [this] case." See Docket No. 31, Ex. 2.

On July 28, 2016, I issued an order to show cause why Defendant should not be held in contempt and why his bail should not be revoked, given his failure to obey the Court's repeated orders to file a financial affidavit. See Docket No. 30. I also ordered CJA counsel to prepare an itemized schedule of costs and fees incurred for counsel's representation of Defendant, which counsel did. Id. The hearing was scheduled for July 29, 2016. Id.

At the July 29, 2016 hearing, and in a memorandum submitted on July 28, 2016, Defendant reported that he no longer sought appointment of counsel and would engage his original counsel or, if that attorney could not represent Defendant, would engage another private attorney. See Docket Nos. 31 and 32. Defendant also protested that completing a financial affidavit implicated his Fifth Amendment privilege against self-incrimination. Id. In recounting the history of this case, Defendant noted that he had sought more time to file a financial affidavit due to complexities with Defendant's current financial status and related concerns for Defendant's Fifth Amendment privilege against self-incrimination. Id.[1]

**Findings**

On this record, I am not persuaded that Defendant is in contempt of the Court's orders to file a financial affidavit. From all that has been represented, I find that a number of legitimate concerns factored into the failure to file. These include Defendant's concerns about his privilege against self-incrimination. See United States v. Gravatt, 868 F.2d 585, 589 (3d Cir. 1989) (discussing the tension between Sixth Amendment right to appointment of counsel premised on providing financial information and a defendant's Fifth Amendment privilege against self-incrimination). They include representations that Boston counsel had been engaged, but was too ill to appear or handle Defendant's representation. I recognize also that Defendant is on release

---

[1] At the hearing, CJA counsel conceded that Defendant never expressly invoked his privilege, and that counsel may have alluded to the privilege only indirectly.

in the Southern District of New York, and that his physical separation from the District of Massachusetts may have complicated his ability to address the question of his representation.

However, there is some evidence that equally suggests that Defendant was less than candid with the Court about his intention to retain counsel on one hand, or his financial inability to pay for counsel, on the other. For instance, at least according to docket entries and the Court's own notes, Defendant never raised his Fifth Amendment concerns until the order to show cause hearing and Defendant's memorandum filed the day before. While CJA counsel may have intended at a prior hearing to convey Defendant's concern in this regard, he did not do so. If he had raised Fifth Amendment concerns, the Court would have discussed with Defendant limits on the government's access and use of information provided in a financial affidavit. See U.S. District Court for the District of Massachusetts Criminal Justice Act Plan, V (C) ("A financial affidavit shall not be considered part of the public record, unless so ordered by the judicial officer, after notice and a hearing."); see also United States v. Ponzo, No. 97-40009-NMG, 2012 WL 28065, at *5-6 (Jan. 3, 2012) (prohibiting government from using financial affidavit and other information until after conclusion of the prosecution of the indictment for which defendant provided financial affidavit and information, in order to effectuate Defendant's assertion of his Fifth Amendment privilege). Indeed, in June and July 2016, Defendant represented that complexities in his personal finances (and not a constitutional objection to preparing a financial affidavit) delayed preparation of a financial affidavit.

I believe the proper resolution of the foregoing is to take no punitive action. However, for the last three months, Defendant has had the benefit of appointed counsel without charge. In other words, taxpayers have financed his defense. This is appropriate only where a Defendant has completed a financial affidavit or otherwise provided information to the judicial officer that

4

demonstrates a financial inability to pay for counsel.  The CJA provides in relevant part: "the court, <u>if satisfied after appropriate inquiry that the person is financially unable to obtain counsel</u>, shall appoint counsel to represent him."  18 U.S.C. § 3006A(b) (emphasis added).  Defendant's recently-announced intention not to file a financial affidavit and instead to engage private counsel denies the Court the opportunity to conduct this inquiry.

**Conclusion and Order**

Accordingly, pursuant to 18 U.S.C. § 3006A,

1. Beginning on September 1, 2016, and continuing on the first business day of every month thereafter, Defendant shall send by first class mail or hand-deliver a check for $1,000 to the Clerk's Office, U.S. District Court, 595 Main Street, Worcester, Massachusetts 01608.  The check shall be made payable to "Clerk, U.S. District Court," and on the check shall be noted the docket number of this case, which is 16-CR-10111-RWZ, and the words, "CJA reimbursement."

2. Such obligation shall continue until Defendant has reimbursed the taxpayers all costs and fees incurred by his CJA counsel in connection with CJA counsel's representation of Defendant in this case.

3. Defendant shall provide timely proof that the check has been mailed to his supervising probation officer at the Pretrial and Probation Services Department each month until this matter is concluded.

4. If Defendant's financial circumstances change, Defendant may, by motion, seek modification of this order based on changed circumstances.

5. Defendant's CJA counsel is directed to prepare a final statement of all costs and fees incurred in his representation of Defendant in this criminal prosecution as soon as

practicable.

6. The Clerk's Office is directed to mail a copy of this order to Defendant at the address appearing on the Pretrial Services Report by certified mail, return receipt requested, and shall forward copies to CJA counsel, Defendant's private counsel (once a notice of appearance has been filed by private counsel), the Pretrial Services and Probation Department and the Court's accounting department.

7. This order shall be an added condition of Defendant's release pending trial. Failure to comply with any portion of this order may result in revocation of Defendant's release on conditions, an order of detention, and a prosecution for contempt of court.

It is so ordered.

Dated:  August 1, 2016                                         /s/ David H. Hennessy
                                                               David H. Hennessy
                                                               U.S. Magistrate Judge